UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| WALTER R. WINFREE, III,<br><br>       *Plaintiff*,<br>  v.<br><br>ERIC S. GIBSON,<br><br>       *Defendant.* | CASE NO. 3:23-cv-00005<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  This matter is before the Court on Defendant's motion for summary judgment. Plaintiff—Walter R. Winfree, III—sued Defendant Eric S. Gibson,[1] a former Nelson County deputy sheriff, for excessive force and state law battery. Plaintiff avers that the force applied to him during his arrest for obstruction of justice—a charge for which he was convicted—was unlawful. Notably, Plaintiff, proceeding pro se, has not responded to Defendant's summary judgment motion. Nonetheless, even viewing the evidence in the light most favorable to Plaintiff, the Court will conclude that there is no dispute of material fact that Defendant's use of force was objectively reasonable; he is, consequently, entitled to immunity in this case. And the Court will, accordingly, award summary judgment to Defendant.

---

[1] Plaintiff sued Eric S. Gibson and E. S. Gibson as separate defendants, but as Defendant points out, "they are the same person." Dkt. 36 at 1 n.1 (citing Dkt. 36 (Ex. 1) ¶ 1). As a result, in this opinion and order, the Court will refer to only one defendant—Eric S. Gibson.

1

## BACKGROUND[2]

This case stems from a dispute over an injured bear cub. In June 2019, Defendant—then a Nelson County deputy sheriff—was dispatched to the site of a wounded cub. It had been struck by a vehicle and was blocking a two-lane road. Dkt. 36 (Ex. 1) ¶¶ 1, 5.

When Defendant arrived at the scene, he encountered Plaintiff. *Id.* ¶ 2; Dkt. 36 (Ex. 7) (Gibson Footage) at 1:12. Plaintiff, who falsely introduced himself as an emergency room physician,[3] Dkt. 36 (Ex. 7) (Gibson Footage) at 1:15–1:20, informed Defendant that he was on the phone with the wildlife center in Waynesboro and demanded that Defendant wait for a veterinarian to arrive before "mov[ing]" the cub. *Id.* at 1:13–1:30.

Nevertheless, the Department of Wildlife Resources—the agency empowered to decide how to deal with the animal—instructed law enforcement to "put down the bear." Dkt. 36 (Ex. 1)

---

[2] Since Plaintiff has not responded to Defendant's motion for summary judgment, *see* Dkt. 35, the following information is derived from the "uncontroverted facts" in Defendant's motion. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993); *see also* Dkt. 36.

The Court notes that it has given Plaintiff ample time to respond to Defendant's motion for summary judgment. Yet, he has nonetheless failed to respond, choosing instead to make a plethora of excuses. For instance, after initially missing the deadline to respond, Plaintiff requested an extension. After months of "trying to hire a lawyer," Dkt. 46 at 2, he represented that he had retained a "new attorney" and stated that she had "requested a 3 month extension … so that she can totally familiarize herself with the case." Dkt. 44; *see also* Dkt. 39. Because Plaintiff has routinely missed court-imposed deadlines, Dkt. 46 at 2–3, the Court directed Plaintiff to "have his new attorney enter an appearance" in the case. Dkt. 42. The Court informed him that if his attorney failed to do so, it would "rule on Defendant's dispositive motions on the record before it." *Id.* Plaintiff's "new attorney" did not make an appearance. Plaintiff then informed the Court that he had not actually retained a new attorney because he could not afford her retainer. *See* Dkt. 45. He again requested more time, stating that he needs "three months to *raise*" money for the retainer. *Id.* (emphasis added). The Court has subsequently denied Plaintiff's motions for extension of time. *See* Dkt. 46; Dkt. 47. It will now decide Defendant's motion for summary judgment on the record before it.

[3] Plaintiff has never been an emergency room physician or a medical doctor of any kind. Dkt. 36 (Ex. 3) ¶¶ 2–4.

¶ 4; *see also* Dkt. 36 (Ex. 7) (Gibson Footage) at 2:59. When Defendant informed Plaintiff of the agency's decision, Plaintiff became distraught. Dkt. 36 (Ex. 7) (Gibson Footage) at 3:05–3:15. He began yelling and moving towards the bear. *Id.*

In response, law enforcement repeatedly instructed Plaintiff to step to the side of the road, but he refused. *Id.* at 3:10. Therefore, Defendant and another officer proceeded to grab Plaintiff's arms and escort him to the side of the road. *Id.* at 3:15–3:20. Law enforcement then asked, "do you want to be detained or do you want to calm down?" *Id.* at 3:30–3:35. Plaintiff responded that they "were just going to have to arrest him." Dkt. 36 (Ex. 1) ¶ 9. Indeed, Plaintiff indicated at least four times during his interactions with law enforcement that they were going to have to arrest him. Dkt. 36 (Ex. 7) (Gibson Footage) at 2:15–3:45. Accordingly, Defendant and another officer placed Plaintiff on the ground and handcuffed him.[4] Dkt. 36 (Ex. 1) ¶ 10. Throughout this process, Plaintiff struggled to get back to the bear. *Id.* As a result of these events, Plaintiff was later convicted of obstruction of justice. *See* Dkt. 36 (Ex. 4).

Plaintiff sustained scrapes to his elbow and knee during his arrest. Dkt. 36 (Ex. 1) ¶ 13. Those injuries were treated on the scene. *See* Dkt. 36 (Ex. 7) (Justus Footage) at 1:30–4:45. Only later did Plaintiff complain of a left shoulder injury—an injury he contends was caused by Defendant "violently wrenching [Plaintiff's] shoulder." *See* Dkt. 1 ¶¶ 13, 23–24. However, Plaintiff's own doctor came to a different conclusion about the source of his shoulder pain; he stated, "I do not see any objective indications to suggest that his shoulder pathology was the result of a recent trauma. All findings appear to be consistent with a chronic degenerative condition." Dkt. 36 (Ex. 6) at 3.

---

[4] During the process of arresting Plaintiff, Defendant's body camera was knocked off, so only part of the interaction was recorded. Dkt. 36 (Ex. 7) (Gibson Footage) at 3:18.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable [fact finder] could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

Relevant here, Plaintiff did not respond to Defendant's motion for summary judgment.

> Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.

*Custer*, 12 F.3d at 416 (citation omitted).

## ANALYSIS

Here, Defendant is entitled to judgment as a matter of law. There is no dispute of material fact that Defendant's use of force was reasonable. He is, thus, shielded by immunity, and as a result, the Court will award Defendant summary judgment on Plaintiff's federal and state claims.

**I.     Defendant did not use excessive force, so he is shielded from Plaintiff's excessive force claim by qualified immunity.**

Defendant asserts that qualified immunity protects him from Plaintiff's excessive force claim. Dkt. 36 at 7–9. He is correct. "Qualified immunity is designed to 'protect[ ] law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines.'" *Aleman v. City of Charlotte*, 80 F.4th 264, 284 (4th Cir. 2023) (quoting *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005)). Specifically, the doctrine "protects officers who commit constitutional violations but who, in light of clearly established

4

law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The qualified immunity analysis consists of two prongs: (1) whether "the official violated a statutory or constitutional right" and (2) whether that "right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). "[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The first prong resolves this case: viewing the facts in the light most favorable to Plaintiff, the Court will hold that Defendant is entitled to qualified immunity because he did not use excessive force—i.e., violate Plaintiff's constitutional rights. To determine whether an officer applied excessive force in violation of the Fourth Amendment, courts examine officers' actions "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Officers are not required to use minimum force. *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988). Rather, an officer's force must simply be "objectively reasonable in light of the circumstances." *Id.* at 396. In determining whether force was reasonable, courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Rarely will a standard procedure such as handcuffing constitute excessive force when the officer was justified in performing the underlying arrest. *See Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002); *Pegg v. Herrnberger*, 845 F.3d 112 (4th Cir. 2017).

5

The circumstances in the present case authorized the level of force Defendant applied to Plaintiff. Plaintiff was lawfully arrested—and later convicted—for obstruction of justice. Dkt. 36 (Ex. 4). Prior to his arrest, Plaintiff repeatedly refused law enforcement's commands to move away from the bear. Dkt. 36 (Ex. 7) (Gibson Footage) at 3:05–3:15; Dkt. 36 (Ex. 1) ¶¶ 7–10. Then, when law enforcement attempted to move him, he resisted, telling them that they "were just going to have to arrest him." Dkt. 36 (Ex. 7) (Gibson Footage) at 3:05–3:45; Dkt. 36 (Ex. 1) ¶¶ 9–10; Dkt. 36 (Ex. 3) ¶ 16. Despite Plaintiff's comment, Defendant gave him the option to "calm down" rather than be arrested, but he refused. Dkt. 36 (Ex. 7) (Gibson Footage) at 3:30–3:35. Indeed, there is no contrary evidence in the record, much less evidence as would give rise to a genuine issue of material fact. Given Plaintiff's resistance, forcing Plaintiff to the ground to handcuff him was an objectively reasonable use of force.

And since Defendant's use of force was reasonable, he did not violate Plaintiff's constitutional or statutory rights. Defendant is, therefore, shielded by qualified immunity, and Plaintiff's excessive force claim must be dismissed.

## II.     **Defendant is also entitled to immunity from Plaintiff's state law battery claim.**

Like with Plaintiff's excessive force claim, Defendant contends that he is immune from Plaintiff's state law battery claim. In considering the issue of immunity, the Court must look to Virginia law. *Unus v. Kane*, 565 F.3d 103, 116–17 (4th Cir. 2009). Mirroring the doctrine of qualified immunity, "Virginia recognizes that police officers are legally justified in using reasonable force to execute their lawful duties." *Id.* at 117 (citing *Pike v. Eubank*, 90 S.E.2d 821 (Va. 1956)); *see also* 1 Virginia Model Jury Instructions – Civil Instruction No. 36.030 (2023). Indeed, "[a police] officer is within reasonable limits the judge of the force necessary under the circumstances, and he cannot be found guilty of any wrong, unless he arbitrarily abuses the

power conferred upon him." *Parker v. McCoy*, 188 S.E.2d 222, 226 (Va. 1972). Put differently, in order to sustain a state law battery claim against a law enforcement officer acting in their official capacity, a plaintiff must establish that the "law enforcement officer's conduct lacked 'justification or excuse.'" *Best v. Farr*, 2023 WL 2975648, at * 5 (Va. Ct. App. Apr. 18, 2023) (quoting *Pike*, 90 S.E.2d at 827). Notably, it is often the case that a "parallel state law claim of assault and battery is subsumed within the federal excessive force claim." *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *see also Hicks v. City of Lynchburg*, 2023 WL 6456488, at *12 (W.D. Va. Sept. 30, 2023) (collecting cases).

Here, for the same reasons Defendant was entitled to qualified immunity, he is also vested with immunity under Virginia state law. Again, given the circumstances described above, *see* discussion *supra* pp. 5–6, forcing Plaintiff to the ground in order to handcuff him was an objectively reasonable use of force; it was certainly not an arbitrary abuse of power. *See Parker*, 188 S.E.2d at 226. At bottom, because Defendant's use of force was objectively reasonable, he is immune from Plaintiff's state law claim.

## CONCLUSION

For the above reasons, the Court will **GRANT** Defendant's motion for summary judgment in a separate order. Dkt. 35. The Court will also **DISMISS** Defendant's motion to dismiss for discovery violations and failure to prosecute as moot, Dkt. 32, and **DISMISS** the above-captioned case.

The Clerk of Court is directed to send a copy of this Opinion to all counsel of record.

Entered this 25th day of January, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE